### GREAT WESTERN BROADCASTING ASS'N, Inc., v. FEDERAL COMMUNICATIONS COMMISSION et al. (two cases).

### INTERMOUNTAIN BROADCASTING CORPORATION v. SAME.

### Nos. 6852–6854.

United States Court of Appeals for the District of Columbia.

Argued Oct. 19, 1937.

Decided Dec. 6, 1937.

---

Paul M. Segal, George S. Smith, and Harry P. Warner, all of Washington, D. C., for all appellants.

Hampson Gary, Gen. Counsel, Federal Communications Commission, George B. Porter, Asst. Gen. Counsel, Fanney Neyman, Asst. Counsel, Andrew G. Haley, Asst. Counsel, and Frank U. Fletcher, all of Washington, D. C., for appellee Federal Communications Commission.

H. H. Shinnick and James W. Gum, both of Washington, D. C., for intervener-appellees Jack Powers and others.

Before ROBB, GRONER, and MILLER, JJ., and WHEAT, District Judge.

GRONER, J.

Great Western Broadcasting Association, Inc., appellant in 6852 and 6853, is a Delaware corporation. On July 6, 1934, it filed two applications with the commission requesting authority to erect (1) a non-quota local station at Logan, Utah, (2) a

nonquota local station at Provo, Utah. On October 22, 1934, Jack Powers and associates, doing business as Utah Broadcasting Company, interveners here, filed an application for a construction permit to erect a similar station at Salt Lake City, Utah.

When the applications were ready to be heard, the commission had before it four additional applications for stations in Salt Lake City, Logan, and Provo. The commission thereupon designated all the applications for public hearing before an examiner, in accordance with section 309(a) of the Communications Act of 1934, 47 U.S.C.A. § 309(a). Intermountain Broadcasting Corporation, appellant in 6854, is the licensee of an existing station operating in Salt Lake City, Utah. Upon its petition it was allowed to intervene in the hearing on the Powers application. Witnesses were examined, depositions were taken, and in October, 1935, the examiner recommended that the application of Great Western for a station at Logan be denied, but that its application for a station at Provo be granted; that the application of Powers and associates be granted; and that all other competing applications be dismissed. On May 1, 1936, the commission, effective September 11, 1936, granted the Powers application for a station at Salt Lake City, but denied the application of Great Western for stations at both Provo and Logan.

The appeals of Great Western in 6852 (Logan) and 6853 (Provo) are taken under section 402(b)(1) of the Communications Act of 1934, 48 Stat. 1093, 47 U.S.C.A. § 402(b)(1). That section allows an appeal to this court by an applicant for a station permit whose application is refused. The appeal of Intermountain in 6854 (Powers—Salt Lake City) is taken under section 402 (b)(2) of the Act, 47 U.S.C.A. § 402(b)(2), permitting an appeal by one other than an applicant, whose interests are adversely affected by the granting of an application.

The record discloses that the commission denied the applications of Great Western for stations at Provo and Logan on the grounds that the applicant corporation failed to show the citizenship of the only stockholder; that it failed to establish financial qualifications necessary to construct and operate the proposed stations; that it failed to furnish all the information called for by the questions contained in the applications; and that the record did not sufficiently disclose the nature and character of the program service intended to be rendered. In its opinion the commission said:

"There was some evidence that the financial ability of the applicant to construct and operate the two proposed stations was in some way dependent upon the Intermountain Broadcasting Corporation. However, the record does not show just in what manner this was to be accomplished. The only money attributable to the Great Western Broadcasting Association, Inc., was $1,000 advanced for organization purposes. There is no legally enforceable agreement in evidence, by which the Great Western Broadcasting Association, Inc., could command sufficient funds to construct and operate the two proposed stations at Provo and Logan, Utah. The Commission is of the opinion and so finds that the applicant has not made a proper showing as to financial ability to construct and operate the two proposed stations."

Appellant Great Western contends that these findings are wholly contrary to the evidence.

Logan, Utah, is a city of approximately 10,000 population, and Provo of a little less than 15,000. There is considerable evidence in the record of the need in each of these cities for a radio broadcasting station and there is also evidence that each of these communities is economically and financially capable of supporting a local station; and if the commission had placed its decision on the ground that there was no need for broadcasting stations in these cities, the conclusion would be inescapable that the commission had refused to consider and give legal effect to established facts. But, as it appears, the decision in these cases turned upon other considerations, the commission having found that the qualifications of the applicant did not reach the standard prescribed by the act and by the commission's rules. It is on this ground that the rejection was placed.

Undoubtedly the act contemplates that the applicant for a license shall establish those qualifications for the license which would make its grant serve the public interest, and this necessarily presupposes a frank, candid, and honest disclosure of the facts as to its qualifications deemed by the commission essential to enable the commission to act within it powers. We must, therefore, have recourse to the evidence to discover, if we can, whether Great Western has indeed failed to meet these require-

ments. Great Western's applications are signed and sworn to by H. R. Duvall, president. They purport to set forth the facts about the applicant which are preliminary to consideration by the commission. They assert that Great Western is not a subsidiary corporation but is its own master; that Duvall owns 80 per cent. of its stock; that the corporation would be the owner and would have absolute control of the stations applied for when licenses were obtained; and that the corporation's assets consisted of $1,000 in cash and $15,000 in securities. When the evidence before the examiner was taken, all these statements were shown to be incorrect. Duvall did not testify. Neither did any one else who was an officer or employee of the applicant corporation. Instead, the testimony was entirely given by a Mr. Fox, president of Intermountain, the intervener in the Salt Lake City controversy. He testified that the statement in the application that Great Western was not a subsidiary corporation was incorrect, that it was in fact a subsidiary of Intermountain. His testimony in regard to the stock ownership in Great Western leaves inevitably the impression that H. R. Duvall, who signed the application as the president of Great Western and who claimed ownership of 80 per cent. of the stock, was a mere figurehead—an employee without personal means and wholly without interest in the subject-matter of the application. And the certificate for the stock appears to have been juggled back and forth between Intermountain and Duvall so as to leave the question of even nominal ownership wholly in doubt. Enough is shown, we think, to make it reasonably clear that the correct facts were withheld and that Intermountain, itself an applicant for a large increase of power which, if granted, would bring both Logan and Provo within its radius, intended and expected contrary to the terms of Great Western's applications to operate those two stations as wholly subsidiary to its Salt Lake City station. And when pressed by the examiner to state how Intermountain would arrange programs for, and operate, the two small stations, Fox replied that the question was one for time and the future, all of which is convincing that the statements in the application of Great Western as to its control and plan of operations were wholly unreliable and without binding force. When there is added to this the lack of financial set-up necessary, as the commission thought,

for the successful construction and operation of the stations, we should have to go very far to say that the action of the commission in declining permits was either arbitrary or capricious.

On the question of financial ability, a reading of the record shows that Intermountain, rather than Duvall, owns—or at least claims to own—Great Western's stock, but that no one has paid anything to Great Western for it. Moreover, Fox testified that there was not in existence any agreement or other writing evidencing Great Western's right to demand payment therefor in any amount. Hence, having received nothing for its stock and having nothing of a tangible nature to take the place of capital, Great Western is an empty corporation possessed of no asset save its charter. The act requires the applicant for a license to construct a station to have adequate financial ability to function in the public interest; and since, as we have seen, Great Western, the named applicant, is shown to be without assets and to be wholly dependent upon Intermountain which may or may not, as it might appear to it wise or unwise, supply the needful financial aid, it would, as we think, be an unwarranted extension of our jurisdiction to hold that the commission exceeded its powers in denying Great Western's applications.

What we have said disposes of the appeals in Nos. 6852 and 6853.

The appeal in 6854 is from the granting of a license to Powers and associates. In this appeal Intermountain appears for itself. It operates KDYL in Salt Lake City. When Powers' application was filed, it obtained leave to intervene in opposition to the grant. In its petition it declared that it was serving Salt Lake City with high quality programs and consistent service and that to do this it depended upon revenues obtained from the sponsorship of business houses in that area; that the establishment of a new station would result in active competition as to (a) the distribution of the audience of listeners; (b) advertising revenue; and (c) available program material; that such competition would reduce the quality and extent of its service and would endanger its right to receive a renewal of its license and act as an obstacle to its pending application for an increase of power. On the hearing it developed that Salt Lake City is now served by two stations, both carrying net-work programs. Station KSL, which is no longer a

party, operates about 50 per cent. of its time on a net-work, while appellant Intermountain operates about 85 per cent. of its time on a net-work. In view of this situation, it is not difficult to see why the commission decided that public interest would be served by the construction of a local nonnet-work station in Salt Lake City. It is from this decision that Intermountain has appealed, and the reasons for the appeal as they appear in the record are as follows:

"1. The Commission erred in granting the application in the absence of a showing that the service now available at Salt Lake City is inadequate.

"2. The Commission erred in finding need for additional service on the ground that present service is made up largely of net-work programs, and in refusing to consider whether the nonnet-work programs offered by existing stations adequately supply local needs.

"3. The Commission erred in predicting need for additional service on the basis of hearsay testimony.

"4. The Commission erred in not finding that existing stations have available ample time to supply the broadcasting needs of Salt Lake City.

"5. The Commission erred in failing to compare the needs for additional service at Salt Lake City and at Logan, and in failing to consider the evidence as to the need of broadcasting facilities at Logan."

And there are some eight other assignments, equally as general and abstract as those summarized above. It will be observed at once that in none of these assignments is it suggested or claimed that the financial or economic interests of Intermountain are adversely affected by the action of the commission in granting Powers' application. If that were the contention, we should have a wholly different case, for we are by no means in agreement with the contention frequently urged upon us that evidence showing economic injury to an existing station through the establishment of an additional station is too vague and uncertain a subject to furnish proper grounds of contest. On the contrary, we think it is a necessary part of the problem submitted to the commission in the application for broadcasting facilities. In any case where it is shown that the effect of granting a new license will be to defeat the ability of the holder of the old license to carry on in the public interest, the application should be denied unless there are overweening reasons of a public nature for granting it. And it is obviously a stronger case where neither licensee will be financially able to render adequate service. This, we think, is the clear intent of section 402(b)(2) of the statute, which provides for an appeal by an aggrieved person whose interests are adversely affected by a decision of the commission granting or refusing an application. But here Intermountain fails to allege financial or economic injury—or any other sort— through the allocation of radio facilities to Powers and associates. The nature of its grievance can be measured on this appeal only by the reasons therefor which the act requires it to give; and in order to determine its appealable interest we must look— and can look only—to those reasons. Considered here in the most favorable light, they do not assert, and there is nothing in them which implies, that the grant of the permit for the Powers station at Salt Lake City will result in damage to Intermountain. Instead its appeal is based on a wholly different theory which, reduced to its simplest form, is that Salt Lake City now enjoys all the broadcasting that the area is entitled to or needs. But this objection might just as well be made by a stranger to the record, and it could hardly be supposed that the interest of a stranger would support an appeal from an order granting a permit for a new station. And so we hold on this subject that, as Intermountain, on the record at least, does not claim that the establishment of the new station in Salt Lake City will result in pecuniary or other damage to it or will deprive it of its ability to continue to function in the public interest, and inasmuch as it is not the applicant for the Logan license and therefore not entitled to challenge its denial, it is without right either under section 402(b)(1) or 402(b)(2) to have its appeal considered by this court.

Nos. 6852 and 6853 affirmed;

No. 6854 appeal dismissed.