Herbert SCHNEIDER, Plaintiff,

v.

E. J. ROLAND, Commandant, United
States Coast Guard, Defendant.

No. 6553.

United States District Court
W. D. Washington, N. D.

Jan. 23, 1967.

Leonard W. Schroeter, Chas. H. W. Talbot, Michael H. Rosen, Seattle, Wash., for plaintiff.

Eugene G. Cushing, U. S. Atty., Gerald W. Hess, Asst. U. S. Atty., Seattle, Wash., Garvin L. Oliver, Atty., Dept. of Justice, Washington, D. C., for defendant.

## OPINION

Before JERTBERG, Circuit Judge, and LINDBERG and BEEKS, District Judges.

BEEKS, District Judge:

This case presents once more the perennial but difficult problem of striking a balance between the protection of individual liberties and the security of the United States.

Plaintiff, who holds a valid license to serve as a second assistant engineer on steam vessels, applied to the Coast Guard in Seattle in October of 1964 for the validation of his mariner's certificate. This validation by law is a prerequisite to his employment aboard a ship of more than 100 gross tons in the U. S. Merchant Marine. As part of that application, he completed a questionnaire relating to his loyalty to the government of the United States.[1] In March of 1965, the Coast Guard informed plaintiff that his questionnaire "does not contain, in the judgment of the Commandant, sufficient information for a determination with respect to your eligibility," and sent him a set of interrogatories to answer in writing and under oath.[2] Plaintiff was informed that, "No

---

1. The relevant questions thereon and plaintiff's answers are:

 Q. "Item 6. Are you now, or have you ever been, a member of, or affiliated or associated with in any way, any of the organizations set forth below? (Answer 'yes' or 'no'). If your answer is 'yes,' give full details in Item 7."

 A. "Yes."

 (The questionnaire then set forth a list of the names of several hundred organizations. This list, commonly known as the "Attorney General's list," was compiled and issued pursuant to Executive Order No. 10450, U.S.Code Cong. & Admin.News 1953, p. 1007.)

 Q. "Item 7. (Use this space to explain items 1 through 6. Show item numbers to which answers apply. At-

 tach a separate sheet if there is not enough space here.)"

 A. "I have been a member of many political and social organizations, including several named on this list. I can not remember the names of most of them and could not be specific about any. To the best of my knowledge, I have not been a member or participated in the activities of any of these organizations for ten years."

2. Those interrogatories inquired as to plaintiff's membership and participation in the organizations on the "Attorney General's list"; his present attitudes toward the Communist Party, the principles and objectives of Communism and the form of government in the United States; and whether he at any time had been a sub-

further action will be taken on your application until your reply is received at this Headquarters."

Plaintiff, through his counsel, replied that requiring him to answer the interrogatories violated his constitutional rights, inasmuch as, "it can be none of the government's business what he reads or what he thinks." He refused to answer the interrogatories, and demanded that his certification be granted.[3] The Coast Guard, pursuant to its regulations, has held plaintiff's application in abeyance ever since, refusing either to deny it or to grant it until such time as plaintiff answers the interrogatories. Plaintiff filed this action requesting a declaration of the unconstitutionality of the legislation, executive orders, and regulations governing the Coast Guard's procedures in this case; a mandatory injunction requiring defendant to approve his application and to refrain from interfering with his employment aboard United States flag vessels; and damages in excess of $10,000.[4] Jurisdiction is vested in this court by virtue of the challenge to Congressional legislation and the request for an injunction against its enforcement.

The Magnuson Act, 40 Stat. 220 (1917), as amended by 64 Stat. 427 (1950), 50 U.S.C. § 191 (1952), provides in relevant part:

"Whenever the President finds that the security of the United States is endangered by reason of actual or threatened war, or invasion, or insurrection, or subversive activity, or of disturbances or threatened disturbances of the international relations of the United States, the President is authorized to institute such measures and issue such rules and regulations—

\* \* \* \* \* \*

"(b) to safeguard against destruction, loss, or injury from sabotage or other subversive acts, accidents, or other causes of similar nature, vessels, harbors, ports, and waterfront facilities in the United States, the Canal Zone, and all territory and water, continental or insular, subject to the jurisdiction of the United States."

On October 18, 1950, pursuant to the authority granted him by the Magnuson Act, the President issued Executive Order No. 10173. As amended by Executive Orders No. 10277 and 10352, subpart 6.10–1 of that order provides:

§ 6.10–1. Issuance of documents and employment of persons aboard vessels. No person shall be issued a document required for employment on a merchant vessel of the United States nor shall any person be employed on a merchant vessel of the United States unless the Commandant is satisfied that the character and habits of life of such person are such as to authorize the belief that the presence of the individual on board would not be inimical to the security of the United States: *Provided*, that the Commandant may designate categories of merchant vessels to which the foregoing shall not apply. (Exec. Order No. 10352, 17 Fed.Reg. 4607 (1952), U.S. Code Cong. & Admin.News 1952, p. 1056).

Regulations promulgated by the Coast Guard pursuant to this Executive Order and published in 33 C.F.R. § 121 establish the machinery of the screening pro-

---

scriber to a publication known as, "The People's World," or had at any time engaged in any activities in its behalf.

3. In the same letter, counsel indicated that from approximately 1940 to 1950 plaintiff was a member of the Communist Party and of other organizations on the "Attorney General's list," and had subscribed to "The People's World"; but that he fundamentally disagreed "with techniques and methods utilized by the Communist Party and by organizations which it controlled."

4. With respect to plaintiff's claim for damages, the pre-trial order provided: "Pursuant to stipulation of the parties the damage question is reserved until after determination of the constitutional questions of law by the three judge Court and may be heard by a single judge."

gram. Included among those regulations are the following:

§ 121.03 Standards.

Information concerning an applicant for special validation endorsement for emergency service, or a holder of such endorsement, which may preclude a determination that his character and habits of life are such as to warrant the belief that his presence on board vessels of the United States would not be inimical to the security of the United States, shall relate to the following: * * *

(e) Membership in, or affiliation or sympathetic association with, any foreign or domestic organization, association, movement, group, or combination of persons designated by the Attorney General pursuant to Executive Order 10450, as amended.

§ 121.05 Applications.
* * * * * *

(d) (1) If, in the judgment of the Commandant, an application does not contain sufficient information to enable him to satisfy himself that the character and habits of life of the applicant are such as to warrant the belief that his presence on board vessels of the United States would not be inimical to the security of the United States, the Commandant may require the applicant to furnish, under oath in writing or orally, such further information as he deems pertinent to the standards set forth in § 121.03 and necessary to enable him to make such a determination.

(2) If an applicant fails or refuses to furnish such additional information, the Commandant shall hold in abeyance further consideration of the application, and shall notify the applicant that further action will not be taken unless and until the applicant furnishes such information.

Other provisions in the regulations require that when the Commandant denies an application for a special validation certificate, he must give writen notice to the applicant along with a statement of the reasons for his so doing. In addition, the regulations provide for a hearing on the Commandant's ruling, and for appeal.

 Plaintiff takes the position that in passing the Magnuson Act, Congress did not intend to authorize the creation of a personnel screening program. With this we cannot agree. The Magnuson Act grants to the executive branch the authority to make rules and regulations for the explicit purpose of safeguarding against sabotage and other subversive acts. An appropriate if not essential component of a code of rules and regulations designed to achieve that objective is an effort to insure that those persons sailing aboard vessels in the merchant marine are not politically motivated to commit acts of sabotage and destruction. Cases arising under the Magnuson Act have consistently so held: Parker v. Lester, 227 F.2d 708 (9th Cir. 1955); United States v. Gray, 207 F.2d 237 (9th Cir. 1953); McBride v. Roland, 2d Cir., 1966, 369 F.2d 65. Counsel contends that merchant seamen spend their professional lives at sea, many of them, such as plaintiff, in the bowels of commercial vessels, having no access to classified information and therefore constituting no threat to national security. We find this a flagrant *non sequitur,* for it is hard to imagine a more strategic location for purposes of sabotage of vessels, harbors, ports, and waterfront facilities than in the bowels of deep-draft vessels.[5]

 We turn, then, to the contention that requiring plaintiff to supply the information demanded infringes upon his constitutional freedoms of speech,

---

5. An illustration of this fact, occurring in recent weeks, is the explosion of a time bomb in the engine room of a Liberian freighter, the GRAND INTEGRITY, on November 13, 1966, just after the ship had entered into international waters from the Columbia River. The explosion killed two, including the master, and injured seven others.

belief, and association, and upon his right to enjoy the benefits of freedom of the press. In Konigsberg v. State Bar of California, 366 U.S. 36, 81 S.Ct. 997, 6 L.Ed.2d 105 (1961), the United States Supreme Court upheld the rejection of an application for admission to the state bar where the applicant had refused to answer questions pertaining to his membership and participation in the Communist Party. In rejecting the same contention as is made in this case, the Court stated:

"\* \* \* general regulatory statutes, not intended to control the content of speech but incidentally limiting its unfettered exercise, have not been regarded as the type of law the First or Fourteenth Amendment forbade Congress or the States to pass, when they have been found justified by subordinating valid governmental interests, a prerequisite to constitutionality which has necessarily involved a weighing of the governmental interest involved. [citations omitted] It is in the latter class of cases that this Court has always placed rules compelling disclosure of prior association as an incident of the informed exercise of a valid governmental function. [citation omitted]. Whenever, in such a context, these constitutional protections are asserted against the exercise of valid governmental powers a reconciliation must be effected, and that perforce requires an appropriate weighing of the respective interests involved. [citations omitted] (366 U.S. at 50–51, 81 S.Ct. at 1007)."

In American Communications Association v. Douds, 339 U.S. 382, 70 S.Ct. 674, 94 L.Ed. 925 (1950), the Supreme Court upheld a requirement that each officer of a labor union utilizing the opportunities afforded by the Management Labor Relations Act must file an affidavit that he is not a member of the Communist Party and does not subscribe to certain of its principles. In response to the challenge that this requirement was

an unconstitutional abridgment of free speech, the Supreme Court held:

"When particular conduct is regulated in the interest of public order, and the regulation results in an indirect, conditional, partial abridgment of speech, the duty of the courts is to determine which of these two conflicting interests demands the greater protection under the particular circumstances presented." (339 U.S. at 399, 70 S.Ct. at 684.)

The Court concluded:

"We must, therefore, undertake the 'delicate and difficult task \* \* \* to weigh the circumstances and to appraise the substantiality of the reasons advanced in support of the regulation of the free enjoyment of the rights.'" [citation omitted]. (339 U.S. at 400, 70 S.Ct. at 684).

There can be little question that there is a vital governmental interest at stake in preventing loss and injury to vessels, ports, harbors, and waterfront facilities of the merchant marine through sabotage and other subversive acts. The merchant marine, sometimes termed this nation's "fourth arm of defense," shoulders much of the burden of logistical support for the armed forces. The vital governmental interest to be served by a program which screens its personnel is clear. But plaintiff charges that the information which the Commandant seeks to elicit from him is not relevant to the protection of that interest, and that therefore the abridgment of free speech and association which the questions entail is not within the protection afforded by the program's lawful purpose.

■ The bulk of the information required by the Commandant, and which plaintiff refused to supply, relates to his membership and activities in the Communist Party and other organizations dedicated to the overthrow of the Government of the United States by the use of force and violence. The extent

to which plaintiff subscribes to those principles, as reflected by his membership and participation in those organizations, must be regarded as a highly relevant line of inquiry in determining whether his presence aboard merchant marine vessels would be inimical to the security of the United States. In McBride v. Roland, supra, a recent decision bearing a close resemblance to the case at bar, the Court of Appeals for the Second Circuit upheld the Commandant's rejection of an application for validation where the information supplied by the applicant indicated he had been an active participating member of the Communist Party. The Court held:

"The screening program is not unreasonable. The merchant marine, although involving private employment, is vulnerable to sabotage and espionage, and is obviously a sensitive area of employment of vital importance to the national defense. * * * In the case before us we have at issue the reasonableness of regulation of employment in a peculiarly sensitive area of those who are knowing members and the nature of whose membership activities makes it likely that their presence would be inimical to the United States. As interpreted and applied to the facts here we find nothing unreasonable in the regulations."

Plaintiff requests that this Court order the Commandant to make a final disposition of his application for a special validation, either denying it or granting it. Holding the application in abeyance, plaintiff contends, has the evils of a formal denial without its concomitant virtues. It deprives him of the right to earn his living as a merchant seaman; and yet denies him the hearing and appeal to which he would be entitled were his application formally denied. Plaintiff recognizes that the Coast Guard regulations (33 C.F.R. § 121.05(d) (2), supra) specifically authorize the Commandant to hold his application in abeyance, but contends that the regulation is not authorized by Congress and is an unconstitutional denial of procedural due process.

In support of this contention, plaintiff cites Graham v. Richmond, 106 U.S.App. D.C. 288, 272 F.2d 517 (1959), where a divided court held that in the absence of express regulatory authority the Commandant of the Coast Guard could not refuse further consideration to the application for validation of a seaman who refused to answer certain interrogatories similar to those in this case. But the *Graham* decision antedated (and perhaps gave rise to) the promulgation of the regulation which governs this case. The absence of regulatory authority formed the basis for the decision in *Graham*; and its presence in this case must similarly be determinative.

Moreover, we cannot agree that the regulation, as applied to plaintiff, is unreasonable. The interrogatories which he refused to answer sought information so relevant to the purposes of the screening program that plaintiff was not privileged to refuse to answer. Where he nevertheless refuses to do so, we do not feel that due process entitles him to the formal denial and to the hearing and appeal which could follow. We make no finding, however, as to whether plaintiff is or is not qualified for validation as a mariner. We are unable to do so for the same reason that the Commandant has not: plaintiff has refused to provide the raw materials for such a decision. He is not entitled to definitive action on his application until he does so.

Other contentions raised by plaintiff, including the allegation that the Commandant's interrogatories were unconstitutionally vague, are without substantial merit, and are not worthy of extended discussion.

Complaint dismissed with prejudice.