CARVILLE v. SMITH.

4-8167                                   201 S. W. 2d 33

Opinion delivered April 14, 1947.

492

*Adams & Willemin,* for appellant.

*Roy Penix,* for appellee.

HOLT, J. Appellants compose the Board of Plumbing Examiners in the city of Jonesboro. Appellee, James A. Smith, was an applicant for "Certificate of Competency" to engage in the plumbing business in that city. The Arkansas General Assembly, in 1941, passed Act 321, to regulate the practice of plumbing in cities of the first and second class. Section 1 provided: "That § 9739 of Pope's Digest be amended as follows: 'Any persons now or hereafter engaged in or working at the business of plumbing in a city of the first or second class within the State of Arkansas having a system of sanitary sewerage, either as master plumber or journeyman plumber, or any person installing or placing any plumbing fixtures or materials, shall first receive a certificate of competency in accordance with the provisions of this Act,' " and § 4 is as follows:

"That § 9743 of Pope.'s Digest be amended to read as follows: Persons who have been engaged in the active practice and business of plumbing as a master plumber or journeyman plumber continuously *for a period of ten years next before making application for plumbers' license to practice or follow the business of plumbing in his respective city* shall not be required to stand an examination of his qualifications, provided that he make affidavit of his actual continuous practice as master plumber or journeyman plumber, as the case may be, for the time provided by this Act and that said affidavit shall be

attested by two supporting witnesses of the truth of same, the said Plumbers Board shall issue a certificate of competency to said applicant granting him the right and privilege to practice and follow the business of plumbing in said city, provided all persons, either master plumbers or journeyman plumbers not having had· said ten years continuous practice and experience as a plumber, as herein provided by this Act shall be required to stand an examination given by the said Board testing *applicant as to his practical knowledge of plumbing, and house drainage.* Such examination must not be conducted in an arbitrary manner but given in such a manner only as to test the applicant's practical ability to perform the duties of a plumber, and after being satisfied as to each applicant's ability, shall thereupon issue a certificate of competency to such applicant authorizing him to work in the business of plumbing, and to place and install plumbing fixtures and materials. It shall be unlawful for any plumber to work in this capacity either as master plumber or journeyman plumber, and install plumbing fixtures or materials unless he shall first obtain a certificate of competency as provided by this Act. The Board shall keep and preserve a record of all plumbers examined by them and to whom a certificate has been issued.''

In conformity with this act, the city council of Jonesboro enacted Ordinance No. 704, which, in effect, contains the same provisions as Act 321, *supra.*

July 11, 1946, appellee filed with the examining board an affidavit, attested by two witnesses, in which he sought a certificate of competency as provided by the act and ordinance. His affidavit recited that: ''James A. Smith, being sworn, states upon oath, that for more than ten years prior to this day he has been engaged in the active business of plumbing as a Master Plumber continuously in the State of Arkansas, and, as such, is entitled to a Certificate of Competency as provided by Act 321 of the General Assembly of the State of Arkansas for the year 1941 and pursuant to the ordinances of the City of Jonesboro, Arkansas, he submits this affidavit to the City Clerk pursuant to said Act and the ordinances

of the City of Jonesboro, and tenders herewith a fee of $5 provided for by said Act and said ordinance. This July 1st, 1946. (Signed) James A. Smith.''

The board refused to grant a certificate of competency on the affidavit, but offered to give appellee an examination in accordance with the provisions of the Act and ordinance. Appellee refused to take the examination, whereupon he was denied a certificate of competency.

Following this action of the board, appellee brought appropriate mandamus proceedings against the board to compel it to issue to him a ''Certificate of Competency,'' in accordance with the provisions of the Act and ordinance.

Upon a hearing, the trial court sustained appellee's prayer and ordered the issuance of a certificate of competency to appellee.

From that order comes this appeal.

Appellant says that there are but two points in issue: ''First, upon filing the affidavit, even though it were not true, was appellee entitled to Certificate of Competency as a matter of right? Second, has the Board acted in an arbitrary manner, even though appellee refused to accept examination offered?''

Appellee argues that it was the duty of the Board of Plumbing Examiners to issue to appellee, Smith, the certificate of competency upon his filing the attested affidavit, *supra,* and that the board was without discretion in the matter. He further contended: ''The plumbing board acted in the most arbitrary manner, thoroughly contrary to the provisions of the plumbing act, when it informed Smith, at the time he appeared to take his examination, that the sole test of his ability to pass the examination as a plumber would be based upon his ability to wipe a lead joint in a smooth and efficient manner.''

The constitutionality and legality of the Act and ordinance, *supra,* are not in question here.

The purpose of such legislation is discussed under the title, ''Plumbers, Electricians, and other Artisans,''

in 41 Am. Jur., p. 661, and in § 7, pages 667 and 668, we find this language: "While there are some authorities to the contrary, it is now generally recognized to be a legitimate exercise of the police power in the interest of the public health, safety, and welfare for the state or a municipal subdivision acting under delegated powers from the state to require registration, examination, and licensing of those who install plumbing or who do electrical installation for others.

"Although the business and trade of a plumber may not require the same training and experience as some other pursuits in life, yet a certain degree of training is absolutely necessary to qualify one as a competent and skillful workman, and it is within the legislative police power to require examination or licensing, or both, of those engaging in the plumbing business as master plumbers, employers of plumbers, or journeymen plumbers, for the protection of the public from the incapacity or ignorance of such persons. Important plumbing work calls for plans and designs and requires skilled supervision, and it is some guaranty of the fulfillment of these requirements if the public authorities require that the plumber employed upon the particular work and his assistants in carrying out the work engaged upon be competently certified and therefore held out to be skilled and capable in that business. Prohibiting any but registered plumbers who have received a certificate of competency from a state board to engage in the business of plumbing does not violate any constitutional rights of individuals. . . . When the legislature provides a local examining board to pass upon the qualifications and fitness of persons to engage in the plumbing business, and provides the board with personnel capable of exercising intelligently the duties imposed, and outlines in a general way the scope of the examination, fixing penalties for those who undertake to engage in business without complying with the act, no objection can be taken on the ground that there is an unlawful delegation of legislative power. . . . If the board acts unfairly or oppressively, such conduct may call for a remedy against the persons who

compose the board, but it does not furnish ground for assailing the validity of the statute. . . .

"The purpose of such legislation is to protect the public from incapacity, ignorance, want of skill, or fraud in those who, to engage in the actual work of plumbing with safety to the health of the people, must have skill and technical knowledge not possessed by the public generally, and if those who—because they are plumbers at the time the law is enacted, or have been engaging in the business for several years—are incompetent to be safely trusted to do plumbing are exempted from the operations of the law, the purpose of the law will not be attained. There is no vested right in anyone to follow an occupation in a way which is inimical to the health of the people, when the legislative authority exercises its right to regulate the occupation. A license to a plumber does not create a vested right to continue to carry on that vocation if there is reasonable ground for requiring new proof of competency by re-examination."

On the question of the examination of plumbers as to their fitness and qualifications to ply their trade, the Supreme Court of Montana, in the case of *State* v. *Stark*, 42 Pac. 2d 890, 100 Mont. 365, said: "Some states have more explicit rules and regulations to govern the examination than Montana, but the function of carrying out such rules and regulations is invariably delegated to local authority and usually to the examining board. In Arkansas, Connecticut, Indiana, Iowa, Maine, and a number of other states, municipal authorities are vested with practically absolute authority to determine qualifications and fitness."

With these general principles in mind, we think the board was justified in refusing to issue to appellee a certificate of competency on the affidavit which he offered.

As we view it, by its very terms, or on its face, it did not comply with the requirements of the Act and ordinance. Each contains the specific provision that before appellee would be entitled to the certificate, with-

out first taking an examination, he must present an affidavit, attested by two witnesses, to the effect that he has "been engaged in the active practice and business of plumbing as a master plumber or journeyman plumber continuously for a period of ten years *next* before making application, etc."

Here, the application which appellee presented recites "that for more than ten years prior to this day he has been engaged in the active practice of plumbing, etc." He does not state that he had been so engaged for ten years *next* before making the application, in fact, it is undisputed that he had not been so engaged. It is also undisputed that he followed the plumbing trade at various places in Arkansas and other states from 1921 until 1932 or 1933. From 1933 until 1941, quoting from appellee's brief, "Smith spent most of his time as a keeper of a hunting lodge in the bottoms of Craighead county," and "from 1941, after the war boom came on and there began to be a great demand for plumbers, Smith began to work regularly at the plumbing trade at Fort Worth, Kansas City, Camp Chaffee, Waco, California Air Base, Goodyear Plant in Texas, Oak Ridge, Tennessee. He came back to Jonesboro in October, 1945, and went to work as a plumber."

"Q. Then, until you came home in October of 1945, you have never done any plumbing work in Jonesboro? A. No, not until I went to work for Reese and Micklish. Q. That was in the spring of 1946? A. Yes, sir. Q. Then you have not been engaged in the business of plumbing in the city of Jonesboro from the time you left up until this spring? A. No, sure haven't. Q. In the last ten years have you worked any at all in the state of Arkansas? A. Not much."

We think, therefore, that, as indicated, that the board was justified in refusing to grant the certificate of competency on the affidavit.

Did the board abuse the power conferred and act in an unreasonable, unfair and arbitrary manner in the examination of appellee? The Act and ordinance required that the board should offer appellee an examination

"testing applicant as to 'his practical knowledge of plumbing, and house drainage. Such examination must not be conducted in an arbitrary manner but given in such a manner only as to test the applicant's practical ability to perform the duties of a plumber, etc.''

It appears that appellee offered himself for examination; that the first question asked was whether he knew how "to wipe a lead joint," and, quoting from appellee's testimony, ''they just wanted me to wipe a lead joint and I told them I hadn't done that since 1929. I told them I was out of practice and they said, well, that would be all.

"Q. And the board of examiners did offer to give you an examination, did they not? A. They offered to give me a lead-wiping examination. Q. Did they not offer to give you an examination? A. Like I told you, they offered to give me an examination, but they wanted me to wipe a lead joint the first thing and I told them I wasn't in practice; that I would have to practice up a little. Q. You admit that you are not capable of wiping a lead joint, do you not? A. Lead is about a thing of the past. Q. Just answer my question, sir? A. I told them I wasn't in practice. Q. And you refused to attempt to complete the test? A. I refused to wipe a lead joint. Q. Then you refused to be examined? A. I refused on the lead joint. Q. You did refuse to do that? A. I refused to do the lead work. Q. Are you aware of the fact that the ordinance regarding the installation of sewage systems specifically requires that certain joints be wiped? A. No, I didn't know that."

Ordinance 574 of the city of Jonesboro, ''An Ordinance to regulate the Business of Plumbing in the City of Jonesboro,'' requires in four separate sections, 9, 14, 24 and 29, the ''wiping of lead joints.''

Appellee testified that wiping lead joints was now obsolete.

We think, however, that the great preponderance of the testimony was just to the contrary. It appears from appellee's own admissions that with a little practice,

he could again wipe lead joints as he had been able to do and had done in the past, but he refused to go on with the examination because he was required to demonstrate to the satisfaction of the board that he could wipe a lead joint.

On the facts presented, we think that under the broad powers given to the board, appellee was offered that character of an examination which would fairly test his practical knowledge of "plumbing and house drainage."

We find no unreasonable and arbitrary action on the part of the board in connection with the offered examination in question. Having offered appellee an examination in accordance with the provisions of the Act and ordinance, as we construe them, and appellee having in effect refused to take the examination, we think the board properly refused to issue to appellee a certificate of competency.

We conclude, therefore, that the trial court erred in ordering the issuance of a writ of mandamus directing appellants "as the Board of Examiners of Plumbers" to issue to appellee a "Certificate of Competency," and accordingly the judgment is reversed, and the cause remanded with directions to proceed in a manner consistent with this opinion.