CONTRACTORS *v.* JONES.
STATE LICENSING BOARD FOR GENERAL
CONTRACTORS *v.* JONES.

4-9377                                              235 S. W. 2d 547

Opinion delivered January 15, 1951.

*William J. Smith,* for appellant.

*Russell V. Johnson* and *Rose, Meek, House, Barron & Nash,* for appellee.

ROBINSON, J.   This appeal arises out of the action of the State Licensing Board for General Contractors, hereinafter referred to as the "Board", in refusing to issue a license to appellees, Claude Jones, Jack C. Jones and Grady S. Jones, partners doing business as J & J Construction Company, hereinafter referred to as the

"Contractors". When the Board refused to issue the license, the Contractors appealed to the Pulaski Circuit Court and, after a hearing before Judge Guy Amsler, the action of the Board was overruled and the issuance of the license was ordered. The Board then appealed to this Court.

Section 71-701 Ark. Stats. (1947) provides: "For the purposes of this act (71-701—71-719) a General Contractor is defined to be any person, firm, partnership, co-partnership, association, corporation, or other organization, or any combination thereof, who for a fixed price, commission, fee or wage attempts to or submits a bid or bids to construct, or undertakes to construct, or assume charge of the construction, erection, alteration, repair, or have constructed, erected, altered or repaired, under his, their or its direction, any building, highway, sewer, grading, or any improvement or structure when the cost of the undertaking is ten thousand dollars ($10,000.00) or more, and one who shall engage in the construction or superintending the construction of any structure or any undertaking or improvements, as above mentioned, in the State of Arkansas, costing ten thousand dollars ($10,000.00) or more, shall be deemed to have engaged in the business of general contracting in the State of Arkansas, provided that this definition shall not include architects or engineers, whose only financial interest in the projects shall be the architectural or engineering fees for preparing plans and specifications, surveys and supervision."

Section 71-713 Ark. Stats. (1947) provides: "Any person, firm, or corporation not being duly authorized, who shall engage or attempt to engage in the business of general contracting in this State, except as provided for in this act (71-701—71-719), and any person, firm, or corporation presenting or attempting to file as their own the license certificate of another, or who shall give false or forged evidence of any kind to the Board, or to any member thereof, in obtaining a certificate of license, or who shall impersonate another, or who shall use an expired or revoked certificate or license, shall be deemed

guilty of a misdemeanor, and shall be liable to a fine of not less than one hundred dollars ($100), nor more than two hundred dollars ($200), for each offense, each day to constitute a separate offense. And provided further that no action may be brought either at law or in equity to enforce any provision of any contract entered into in violation of this act.''

Section 71-719 Ark. Stats. (1947), provides authority for the Circuit Court to review the action of the Board, and the Circuit Court's judgment is reviewable here.

The Contractors are residents of Oklahoma with their principal office in Oklahoma City. They have done considerable work over a period of years for the United States Government in the construction of power lines. On February 15, 1950, the Southwestern Power Administration of the Department of the Interior of the United States Government advertised in Oklahoma newspapers asking for sealed bids on the construction of a 66-mile power line from Norfork Dam to a point 5 miles west of Pocahontas, Arkansas. On the 22nd day of March, 1950, the Contractors submitted a bid for the construction of the power line and on March 31st signed a contract therefor. With this project in mind on February 27th, before submitting a bid or entering into a contract, the Contractors wrote the Secretary of State for the State of Arkansas as follows:

''We are anticipating some construction work in the State of Arkansas and understand that it is necessary that we have an 'Arkansas Contractors License' or that we file 'qualification and financial information with your state before we are eligible to commence work on the construction project.'

''Please furnish us with the necessary forms for execution and filing with your state.

''If your office does not handle this license, we will appreciate your forwarding this letter to the proper department so that we may immediately qualify in the state of Arkansas.''

Evidently the Secretary of State turned the above mentioned letter over to the Board, for on March 2, 1950, the Board mailed to the Contractors necessary forms for use in applying for a contractor's license in this State. Incidentally, it will be noticed that the Contractors' letter to the Secretary of State stated that they understood it was necessary to obtain an Arkansas Contractor's license before they would be eligible to commence work on the construction of a project in this State. In the letter of the Board to the Contractors on March 2nd, nothing was said about the Contractors being in error as to their understanding as to what the law of Arkansas provides in this regard.

On March 9th the Contractors wrote to the Board as follows:

"Attached hereto is our Check No. 1546 in amount $50.00 which we have had certified and which is in payment for a General Contractor's License in your state provided we secure approval. In addition we attach hereto statement of Experience and Financial Condition together with the required affidavits and etc.

"It is our intention to bid on some work in the State of Arkansas in the very near future, and we would appreciate anything that the Board can do to expedite the application filed herewith."

On March 10th the Board wrote to the Contractors as follows:

"We acknowledge receipt of your application for a contractor's license, which seems to be complete with one exception. Please advise the answer to Question 15, Page 3."

On March 13th the Contractors wrote to the Board:

"In connection with our application for contractors license in your state, we have your letter of March 10, 1950, asking for answer to question 15, Page 3. The answer is *yes* we do file semi-annual reports with the Bureau of Contract Information in Washington, D. C.

We are sorry this answer was not on the application originally.''

The Contractors heard nothing further from the Board until April 18th when they received a letter as follows:

''In your application for a contractor's license you attached a 'list of equipment owned as of December 31, 1948.' Your financial statement is dated December 31, 1949.

''Inasmuch as your equipment shows approximately one-third of your entire net worth, it will be necessary for you to furnish the information requested in Question 11, Page 7, as of December 31, 1949. Your prompt attention will be appreciated. The next meeting of the Board has been tentatively set for May 4.''

On April 20th the Contractors wrote to the Board:

''As requested in your letter of April 18th, we attach hereto a list of our equipment owned as of December 31, 1949, and which we wish you to incorporate in our application for a contractor's license in answer to Question 11, Page 7.

''Should any additional information be required do not hesitate to advise us accordingly.''

Apparently the next thing the Contractors heard from the Board was that the granting of the license had been refused because the Contractors had made a bid and executed a contract for the power line to be constructed from Norfork Dam to Pocahontas while the application for the license was pending and before the actual issuance of the license. There is no showing that the License was refused for any other reason. Judge Amsler of the Pulaski Circuit Court in directing the Board to issue the license based his opinion on the ground that the Act makes a distinction between a ''general contractor'' and ''general contracting'', and it is only ''general contracting'' that the Statute prohibits until the issuance of the License, and the Judge wrote an able opinion in this respect which is a part of the record.

However, conceding without deciding that for the purpose of issuing a license there is no distinction between "general contractor" and "general contracting", we are of the opinion that the ruling of the Circuit Court should be affirmed because the action of the Board in refusing the license under the facts and circumstances is not justified by the record.

Section 71-709 Ark. Stats. (1947) provides: "The Board, in determining the qualifications of any applicant for original license, or any renewal license, shall, among other things, consider the following: (a) experience, (b) ability, (c) character, (d) the manner of performance of previous contracts, (e) financial condition, (f) equipment, (g) any other fact tending to show ability and willingness to conserve the public health and safety, and (h) default in complying with the provisions of this act, or any other law of the State.

. . . . . . . . .

It is the contention of the Board that the applicant violated the law by submitting a bid and executing a contract on the project herein mentioned before the license was actually issued, and for that reason it was justified in refusing to issue the license. The Act does not say that the Board shall not issue a license if there has been a default by the applicant in complying with the provisions of the Act, or if he has violated any other law of the State—it merely states that such default in complying with the provisions of the Act or any other laws of the State shall be taken into consideration by the Board.

Everything in the record indicates that the applicants are experienced, that they have ability and good character, that the manner of their performance of previous contracts has been good, that their financial condition is sound, that their equipment is substantial. In fact, there is not one scintilla of evidence in the record which would justify a ruling that the license should not be issued unless the act of the Contractors in submitting a bid and entering into the contract while their application for a license was pending could be construed

as not only a violation of the provisions of the Act or some other law of the State of Arkansas, but such a serious violation that they should not be issued a license.

We do not believe the record justifies such a finding. In the first place the Contractors are residents of Oklahoma; they submitted their bid in Oklahoma and executed their contract in Oklahoma through an office of the Government located in Oklahoma. They did not commit one single act in the State of Arkansas except to come and look at the location of the proposed project and to apply for a license, until after the Circuit Court had held that they should be granted a license. It does not appear that they had any intention whatever of violating the provisions of the Act or any law of the State of Arkansas. They made an application for a license in what appears to be the usual and customary manner.

In the first letter they wrote in applying for the license they stated: "We are anticipating some construction work in the State of Arkansas and understand that it is necessary that we have an Arkansas Contractor's License, or that we file qualifications and financial statement with your State before we are eligible to commence work on the construction project." It can be seen from this letter it was the *understanding of the Contractors* that they had to have a license before they would be eligible *to commence work on the construction project,* and not that they had to have a license before they could make a bid or execute a contract in Oklahoma. In none of the letters of the Board to the Contractors subsequent to that time did the Board disabuse the Contractors' minds of that idea.

The Contractors, being sure of their position from the standpoint of experience, ability, character, manner of performance of previous contracts, financial condition, and equipment, assumed that the license would be issued any day, and had no intention of violating any provisions of the Act or any laws of this State by submitting a bid and executing a contract before the license was actually issued.

We believe the record shows that the Contractors acted in utmost good faith and did not violate the spirit or the intention of the Act.

The powers of the Board should not be exercised in a capricious, unreasonable or arbitrary manner. *Carville* v. *Smith*, 211 Ark. 491, 201 S. W. 2d 33.

The judgment of the Pulaski Circuit Court is affirmed.

GEORGE ROSE SMITH, J., not participating.