MEADOWS *v.* QUOSS.

4-9738                                          248 S. W. 2d 101

Opinion delivered April 21, 1952.

*L. H. Chastain,* for appellant.

*Harrell Harper,* for appellee.

HOLT, J. In a complaint filed June 22, 1951, appellant, Dyer Meadows, alleged, in effect, that he had previously been given an examination before appellee, The Board of Plumbing Examiners of the City of Ft. Smith, in an effort to secure a plumber's license in accordance with the provisions of §§ 19-3701—19-3714, Ark. Stats. 1947; that he "answered adequately questions dealing with the practical installation of plumbing, that said defendants (appellees) in asking highly technical questions acted unfairly. and oppressively and arbitrarily toward this plaintiff; that said examination was conducted in an arbitrary manner and was not given in such a manner only as to test the applicant's practical ability to perform the duties of a plumber, and that the defendants failed and refused to issue this plaintiff a Certificate of Competency as required by the law."

His prayer was "for a writ of mandamus compelling the aforesaid defendants, and each of them, composing the board of plumbing examiners in the city of Fort

Smith, Arkansas, to give plaintiff a reasonable examination and to issue to said plaintiff a Certificate of Competency to engage in the plumbing trade.''

Appellee answered with a general denial and affirmatively alleged that ''the plaintiff (appellant) herein applied for and was given examinations as to his knowledge of plumbing and drainage in May, 1951, and again on June 15, 1951; that said examinations were reasonable and given only for the purpose of testing the competency of the plaintiff and were the same or similar as those given to all other applicants who applied for and take said examinations,'' and that the Board is ''ready and willing to give plaintiff a reasonable examination as they have in the past and to issue to plaintiff a plumber's certificate authorizing him to work at the business or trade of plumbing and to place and install plumbing fixtures and materials, if said board is satisfied after said examination of plaintiff's competency.''

The record further reflects that Meadows was given a third examination August 1, 1951, and again failed to pass, but he alleged that the ''examination questions were more arbitrary, discriminatory, theoretical, and unreasonable than previous examination[s] given this plaintiff (appellant) but that nevertheless plaintiff answered each and every question even though some of the questions are not contained in plumbing code.''

The trial court denied the relief prayed by appellant, and we think correctly so. From the decree is this appeal.

Section 19-3706, above, provides: ''All persons, either master plumbers or journeyman plumbers * * * shall be required to stand an examination given by the said Board testing applicant as to his practical knowledge of plumbing, and house drainage. * * * Such examination must not be conducted in an arbitrary manner but given in such a manner only to test the applicant's practical ability to perform the duties of a plumber, and after being satisfied as to each applicant's ability, shall thereupon issue a certificate of competency to such applicant authorizing him to work in the business of plumbing,

and to place and install plumbing fixtures and materials.''

We find no evidence in this record that any of the examination questions were arbitrary or unreasonable.

Appellant's witness, Henry Quoss, the City's plumbing inspector, testified on direct examination: ''Q. I want to ask you, Mr. Quoss, if the examination you gave tested this plaintiff's (appellant's) practical ability to perform the duties of a plumber, or whether your examination went further than that into theory, or specialized plumbing? A. No. We just tested according to the code—according to our work here in town. There are different places that have strong ordinances, but we go by this ordinance. We go according to the work we do here. Q. Doesn't this ordinance cover every theoretical and specialized phase of plumbing? A. No, just everyday experience. Any plumber can tell you that. Q. The ordinance covers every situation that might arise in the plumbing field? A. Oh, yes, plumbing and gas. We don't even enter into gas. Q. And your examination is based on that? A. Yes, I think so,'' and on cross-examination: ''Q. Please tell the court whether or not the questions asked Mr. Meadows were the same as those asked other applicants at the time of this examination and similar to those asked all applicants at all times? A. That's right.''

It appears that appellant has been offered three separate opportunities to pass the examination required and under the broad powers given the Board under the statute, we find that it has not been shown that it (Board) has acted in an arbitrary or unreasonable manner.

In the recent case of *Carville* v. *Smith*, 211 Ark. 491, 201 S. W. 2d 33, wherein the facts were, in effect, similar to the present case, in construing the above sections of the statute, we said: ''Under the broad powers given to the board, appellee was offered that character of an examination which would fairly test his practical knowledge of 'plumbing and house drainage.'

''We find no unreasonable and arbitrary action on the part of the board in connection with the offered ex-

amination in question. Having offered appellee an examination in accordance with the provisions of the Act and ordinance, as we construe them, and appellee having in effect refused to take the examination, we think the board properly refused to issue to appellee a certificate of competency."

Finding no error, the decree is affirmed.