Louis **STINE** et al., Appellants,

v.

**KANSAS CITY**, Missouri, Respondent,

Borg-Warner Corporation, et al., Respondent-Intervenors.

**WALDO PLUMBING AND HEATING COMPANY** et al., Respondents,

v.

**KANSAS CITY**, Missouri, Appellant,

Celanese Corporation, et al., Respondent-Intervenors.

No. 25307.

Kansas City Court of Appeals, Missouri.

June 1, 1970.

Motion for Rehearing or Transfer to Supreme Court Denied Oct. 5, 1970.

Charles C. Shafer, Jr., Kansas City, for appellants Stine, and others.

Aaron A. Wilson, Jr., Acting City Counselor, L. B. Saunders, Associate City Counselor, Kansas City, for appellant-respondent Kansas City.

Kent E. Whittaker, Charles G. Young, III, Kansas City, for respondents-intervenors.

SHANGLER, Presiding Judge.

This review involves appeals taken from two separate judgments in suits, consolidated for trial, in which the Uniform Plumbing Code—Ordinance No. 34894—only latterly adopted by the City of Kansas City, Missouri, was the subject of controversy. One suit sought to enjoin the enforcement of the Uniform Code and the other asked for the court's declaration as to the rights and obligations of the

parties under its provisions and those of Chapter 341, V.A.M.S., relating to the licensing of journeyman plumbers in Kansas City. The City was the initial defendant in each case. Later, upon their motions, numerous other interested parties were allowed to intervene as defendants.

There had been in effect in the City of Kansas City a Building Code, Articles XXXVI, XXXIX and XL of which, providing for the licensing of plumbers and the regulation of plumbing materials, comprised the Plumbing Code. On August 9, 1968, the City adopted Ordinance No. 34894 (later referred to and approved by the electorate) which repealed those three Articles and enacted a New Uniform Plumbing Code. This new code provided for the regulation of plumbing materials and other features but was entirely silent as to the licensing of journeyman plumbers.

It is required by Sections 341.010 to 341.080, R.S.Mo., 1959, V.A.M.S., however, that each city of 15,000 or more inhabitants establish a board of examiners of plumbers to examine, qualify and license journeyman plumbers, master plumbers and employing plumbers. It is provided by Section 341.030 that all persons to be licensed as plumbers shall apply to the "board of the city where they reside or to the board nearest their place of residence".

Louis H. Stine and others, all qualified journeyman plumbers and licensed as such by the City of Kansas City, filed suit to enjoin the City from enforcing the Uniform Plumbing Code because it made no provision for the examination, qualification and certification of journeyman plumbers as required by the statutes cited. That lacuna, they contend, results in a conflict between the statutes and the ordinance and hence, the invalidity of the latter. A temporary restraining order issued and the effectiveness of the Uniform Plumbing Code was stayed. Thereafter, Borg-Warner Corporation, Celanese Corporation, Uni-Royal, Inc. and the Plastics Pipe Institute, all interested in the validation of that section of the Uniform Plumbing Code regulating Plumbing materials (and authorizing the use of plastic pipe) were permitted to intervene as additional defendants. Defendant City made answer to the petition, as did the intervenors.

The second petition, for declaratory judgment, was brought by Waldo Plumbing and Heating Company, a plumbing contractor, and by Associated Plumbing Contractors of Greater Kansas City, a commonalty of plumbing contractors. As their business activities entailed the employment of journeyman plumbers to work within Kansas City and as that City's Code made no provision for their licensing plaintiffs were concerned lest they and the journeymen would thereby be subject to penal sanctions. This is because Section 341.080, V.A.M.S., makes it a misdemeanor to violate Chapter 341 which requires that plumbing work be done only by licensed plumbers in cities of 15,000 or more inhabitants. Accordingly, plaintiffs sought a judicial declaration as to their rights, duties and obligations under the Uniform Plumbing Code and under Chapter 341, and particularly, whether journeyman plumbers working within the limits of the City of Kansas City are required to be licensed and if so, whether the defendant City has the duty to license them. Once again, Celanese Corporation, Uni-Royal, Inc. and the Plastics Pipe Institute intervene as additional defendants. They made answer to the petition, but defendant City of Kansas City did not.

By their Stipulation filed with the court, all the parties admitted to a set of facts and undertook to agree, as well, that only two "issues of law (which we later describe), and no others, remain(ed) for the consideration of the Court". The court thereupon entered its detailed findings and judgments in the consolidated cases. On the petition for injunction, the issues were found against the plaintiffs. The trial court dissolved the temporary restraining order and denied the permanent injunction, thereby sustaining the validity of the Uniform Plumbing Code. From this judgment, the

plaintiffs Stine and the others appealed to this court. In this appeal, the defendant City is a respondent.

On the petition for declaratory judgment the court found that the requirement of Chapter 341 that journeyman plumbers in cities of 15,000 or more inhabitants be licensed "(was) not affected by the adoption of Ordinance No. 34,894, or by the absence of licensing procedures (as to journeyman plumbers) in Kansas City, Missouri". The court further declared that in the absence of licensing procedures in the City, those of its residents not licensed as plumbers, before engaging in plumbing work within the City, must obtain them from the board of examiners nearest their place of residence as provided by Section 341.030, V.A.M.S. Defendant City's post-trial motion to amend judgment was denied. The City appealed from this judgment to the Supreme Court. On its own motion, that court transferred the City's appeal to this court to determine the question of appellate jurisdiction. We proceed to do so.

■ Defendant City of Kansas City seeks to invoke the jurisdiction of the Supreme Court under the provisions of Article 5, Section 3 of the Constitution of Missouri of 1945, V.A.M.S., which vests exclusive appellate jurisdiction in that court in all cases involving the construction of the Constitution of the State of Missouri. That section of the constitution which is said to require construction is Article 6, Section 22, which provides:

"No law shall be enacted creating or fixing the power, duties or compensation of any municipal office or employment, for any city framing or adopting its own charter under this or any previous constitution, and all such offices or employments heretofore created shall cease at the end of the terms of any present incumbents."

The construction defendant City contends for would render the application of Sections 341.040, 341.050 and 341.070 to it, as a constitutional charter city, unconstitutional because, it is asserted, those sections undertake to create and fix the power, duties and compensation of municipal offices—the Board of Examiners and Plumbing Inspector. The precedents of City of Joplin v. Industrial Commission of Missouri, Mo., 329 S.W.2d 687 and State ex rel. Burke v. Cervantes, Mo., 423 S.W.2d 791 suggest that a substantively arguable constitutional issue subsists. But the first step to be taken by a litigant seeking to invoke the appellate jurisdiction of the Supreme Court on the ground that a constitutional question is involved is to raise that question at the first available opportunity. City of St. Louis v. Butler Co., 358 Mo. 1221, 219 S.W.2d 372, 376 [5, 6]; Mooney v. County of St. Louis, Mo., 286 S.W.2d 763, 766 [2]. Defendant City failed to take that first step. The City's first opportunity to have raised the constitutional question would have been in its responsive pleadings. Its answer in the injunction suit (from the favorable judgment in which, in any event, the City is not an aggrieved party and of which it has no cause to complain) did little more than tender the general issue. No reference to any constitutional provision or question appears there. The City made no answer at all to the petition for declaratory judgment. The constitutional issue was first formally raised in the City's after-trial Motion to Amend Judgment. Obviously, it was not raised at the first opportunity and none was preserved. Luttrell v. State Highway Commission, Mo., 367 S.W.2d 615, 616 [1].

■ The defendant City fixed its intentions as to the law questions to be litigated in the trial court at the very beginning, and a constitutional question was not among them. As a party to the Stipulation, it undertook to agree that the only issues of law, "and no others, remain(ing) for the consideration of the Court" were: "1. A declaration of the rights, duties and obligations of all of the parties under Ordinance No. 34,894 and Sections 341.010 to

341.080, R.S.Mo., 1959, and, 2. If Ordinance No. 34,894 is in violation of Sections 341.010 to 341.080, R.S.Mo., 1959 for failure of the ordinance to provide for the examination, qualification and certification of Journeymen Plumbers." It made no mention of Article 6, Section 22 of the Constitution. While it is not competent for litigants to stipulate as to bind the court to circumscribed questions of law, as those decisions must rest with the court, (Wells v. Covenant Mut. Ben. Ass'n of Illinois, 126 Mo. 630, 29 S.W. 607, 609; 50 Am. Jur., Stipulations, Sec. 5, p. 607) the defendant City, by this "Stipulation", evidenced its intention to forgo asserting the constitutional question it now urges. Appellate jurisdiction of the defendant City's appeal is properly in the Kansas City Court of Appeals, and we accept it. In doing so, we consolidate the appeals from both judgments.

The issue presented in the injunction suit against the City of Kansas City is, simply, whether Ordinance No. 34894 is in violation of Sections 341.010 to 341.080, V.A. M.S. for failure of that ordinance to provide for the licensing of journeyman plumbers. As we have noted, Section 341.-010 requires cities of 15,000 or more inhabitants to license plumbers. Section 341.-060 also requires such cities to regulate the materials used in plumbing work. Admittedly, the ordinance was enacted in compliance with the latter requirement. No party disputes that the City may validly regulate, by ordinance, the materials to be used in plumbing work. Appellant Stine and those joined with him contend, however, that the requirement imposed upon the City by Chapter 341 to provide for the licensing of journeyman plumbers is an exercise by the state of its police power as to the public health, an area of state-wide concern, to which the City's enactments and

policy must yield. For that reason, they conclude, the Uniform Building Code, which contains no such licensing provision, is void and its enforcement should be enjoined. We can agree with the general statement of legal principles advanced by appellants, but not with their ultimate conclusion.

■ The City of Kansas City, Missouri, is a constitutional charter city organized pursuant to Article 6, Section 19 of the Missouri Constitution which provides, in part:

"Any city having more than 10,000 inhabitants may frame and adopt a charter for its own government, consistent with and *subject to the constitution and laws of the state * * *.*" (Emphasis added)

Not only must such a charter submit to the primacy of the general law, but so must ordinances enacted under it when not confined to the exercise of the municipality's private corporate functions. State ex rel. United Rys. Co. of St. Louis v. Public Service Commission of Missouri, 270 Mo. 429, 192 S.W. 958, 963 [7]; Coleman v. Kansas City, 353 Mo. 150, 182 S.W.2d 74, 77 [4–6]. Section 71.010, V.A.M.S. requires that any municipal corporation, even those under special charter, having authority to pass ordinances regulating subjects upon which there is a general law of the state, "unless otherwise prescribed or authorized by some special provision of its charter," shall do so "in conformity with the state law upon the same subject". This statute, imposing the limitation of consistency with state law upon municipal legislation, is but the expression of "a familiar rule" which would apply even though not expressly stated in the statute's grant of power.[1] State ex rel. Hewlett v. Womach,

---

1. We do not, of course, consider the effect of this "familiar rule" when the inconsistency is not between a statute of general concern and a charter or ordinance, but between such a statute and a constitutional provision such as Article 6, Section 22. This is the very question the City, as appellant in the declaratory judgment action, urges in its brief and after-trial Motion to Amend Judgment, but which was

355 Mo. 486, 196 S.W.2d 809, 812 [1]; City of St. Louis v. Stenson, Mo.App., 333 S.W.2d 529, 535–536; McQuillen, Municipal Corporations, Vol. 5, Sec. 15.22, 1969 Ed.

■ The police power is an "essential attribute of government", a fundamental governmental function. Marshall v. Kansas City, Mo., 355 S.W.2d 877, 883 [10]; State ex rel. Hawes v. Mason, 153 Mo. 23, 54 S.W. 524, 529. Statutes regulating the business of plumbing and the licensing of plumbers are exercises of the state's police power in the area of the public health and safety. The purpose of requiring the examination and licensing of plumbers is to protect the public against the hazard to health of work done by those not competent to do it. McQuillen, op. cit. Sec. 26.127; Section 341.050, V.A.M.S. This rationale was adopted by the Supreme Court in Ex Parte Smith, 231 Mo. 111, 132 S.W. 607, at 609:

> "(T)he great weight of authority in this country is to the effect that the business of plumbing is so intimately connected with the public health, especially in large centers of population where scarlet fever, typhoid fever, diphtheria, and other diseases that are apt to become epidemic, as to be the proper subject of police regulation. * * * 'The Legislature in creating a system by which the qualification of plumbers (is required) * * * aids the citizen, * * * and furnishes some safeguard against the performance of bad and unsafe work.' "

And while other holdings of the *Smith* case involving the application of a rule of statutory construction have since been criticized[2], the essential holding upon which we rely remains unimpaired as the definitive declaration on this subject by our Supreme Court. See also: Michelson v. City of Grand Island, 154 Neb. 654, 48

N.W.2d 769, 26 A.L.R.2d 1346; Carville v. Smith, 211 Ark. 491, 201 S.W.2d 33; Warburton-Beacham Supply Co. v. City of Jackson, 151 Miss. 503, 118 So. 606, 47 Am.Jur., Municipal Corporations, Sec. 107 (pocket Supp. p. 46, reference to p. 718 of text).

■ A municipal corporation, on the other hand, has no inherent police power. "Its authority to exercise such power within a particular field must come from a specific delegation by the state or in certain cases from the express or fairly implied grant of powers of its charter." Tietjens v. City of St. Louis, 359 Mo. 439, 222 S.W.2d 70, 73 [8]; Kansas City v. J. I. Case Threshing Machine Co., 337 Mo. 913, 87 S.W.2d 195, 202; Turner v. Kansas City, 354 Mo. 857, 191 S.W.2d 612, 616 [3–6]. The exercise of such a governmental power granted by law to a municipal corporation, however, must be in accordance with the grant and in harmony with the state law on the subject. Bardenheier Wine & Liquor Co. v. City of St. Louis, 345 Mo. 637, 135 S.W. 2d 345 [2]. Thus, we confront the question initially posed—whether defendant City's Ordinance No. 34894 enacting the Uniform Building Code, which regulates materials used in plumbing work but which makes no provision for the licensing of journeyman plumbers, is void as in conflict with Chapter 341 which requires both.

In this determination, we must recall that the relief sought by appellants journeyman in the trial court was not to command the City's enactment of an ordinance providing for the licensing of journeyman plumbers as prescribed by Chapter 341, but to enjoin the enforcement of the ordinance actually enacted. But even if we were to conclude that Sections 1.2 through 2.12 of Ordinance No. 34894 dealing with the licensing of plumbers are void for failing to provide for the licensing of journeyman

---

not properly raised for appellate review. See: State ex rel. Burke v. Cervantes, supra; Missouri Law Review, Vol. 35, p. 86 (Winter, 1970).

2. Keane v. Strodtman, 323 Mo. 161, 18 S.W.2d 896, 898 [6, 7].

plumbers, that would not result in the invalidation of the balance of the ordinance. For Ordinance 34894 not only undertakes to license plumbers, but also provides for the regulation of materials to be used in plumbing work as required by Section 341.060. And no party contends that the plumbing materials regulation feature of the ordinance is contrary to statute or is otherwise invalid.

 An ordinance may be given effect although void in part "unless its provisions are so connected and interdependent that it cannot be presumed the legislature would have enacted one without the other". Poole & Creber Market Co. v. Breshears, 343 Mo. 1133, 125 S.W.2d 23, 33 [20]; State ex rel. State Highway Commission of Missouri v. Curtis, 365 Mo. 447, 283 S.W.2d 458, 463, 464 [2, 3]; McQuillen, op. cit. Sec. 20.64. In this case, the admittedly valid provisions regulating plumbing materials are readily severable from those dealing with the licensing of plumbers and are thus capable of enforcement as a distinct and integral ordinance. The trial court properly refused to stay its effectiveness.

As to the appeal by the City of Kansas City from the declaratory judgment, the essential questions raised at the trial and on this appeal, as we have previously framed them, are whether journeyman plumbers working within the limits of Kansas City are required to be licensed and if so, whether the defendant City has the duty to license them. We believe both questions must be answered affirmatively.

The provisions of Chapter 341 impose upon cities of 15,000 or more inhabitants (within three months of its passage) the duty to provide for the licensing of plumbers, the regulation of plumbing materials and the inspection of plumbing installations. They also require any person engaged or working in the business of plumbing in such cities to be licensed and prescribe penalties as for a misdemeanor for failing to do so. Those provisions which

especially engage our concern are Section 341.010, which provides in part:

"That any person now or hereafter engaging or working at the business of plumbing in cities or towns of fifteen thousand or more inhabitants in this state, either as master plumber or *journeyman plumber, shall first receive a certificate* thereof in accordance with the provisions of sections 341.010 to 341.-080."

And that part of Section 341.020 which provides:

"Any person desiring to engage or work at the business of plumbing, either as a master plumber, employing plumber, or as a *journeyman plumber,* in cities having a population of fifteen thousand or more, *shall make application to a board of examiners* herein provided for, and *shall * * * be compelled to pass such examination as to his qualifications as said board may direct. * * *"

And, also, that part of Section 341.040 which provides:

"That *there shall be* in every city of fifteen thousand inhabitants or more, *a board of examiners of plumbers,* consisting of three members, *one of which shall be* the chairman of the board of health of said city * * * a second member, *who shall be* a master plumber; a third member *shall be* a journeyman plumber. Said second and third members *shall be* appointed by the mayor and approved by the council or city commissioners, as the case may be, of said cities within three months after the passage of sections 341.010 to 341.080, for a term of one year * * *".

And, finally, those portions of Section 341.-050 which provide:

"Said board of examiners *shall * * * designate the times and places for examination of all applicants desiring to engage in or work at the business of plumbing within their respective juris-

diction. Said board *shall* examine said applicants as to their practical knowledge of plumbing, house drainage and ventilation, and if satisfied of the competency of such applicants, *shall* thereupon issue a certificate to such applicant authorizing him to engage in or work at the business of plumbing either as a master plumber or employing plumber or journeyman plumber. * * *" (Emphases supplied throughout)

As to those seeking a license to engage or work in the business of plumbing, the tone of the statutory language is peremptory. Where, as here, a statute uses the word "shall" and then provides a penalty for failure to do that which is required, it is mandatory. State ex rel. Taylor v. Wade, 360 Mo. 895, 231 S.W.2d 179, 181 [1, 2]; State ex rel. and to the Use of Dietrich v. Schade, Mo.App., 167 S.W.2d 135, 141 [8]. Also, statutory provisions relating to the essence of the thing to be done, that is, matters of substance, are mandatory. State ex inf. Taylor ex rel. Borgelt v. Pretended Consolidated School Dist. No. 3, 362 Mo. 249, 240 S.W.2d 946, 950 [4, 5]. Among the essential purposes of Chapter 341 is to ensure that in such cities plumbing practitioners shall possess a level of competence in that art. Accordingly, we concur with the trial court's declaration that "Section 341.010 (among other provisions) requires that journeyman plumbers must possess a certificate to work at the business of plumbing, before engaging in such work within the territorial limits of Kansas City, Missouri".

Contrary to the trial court's implicit declaration, however, we also conclude that these statutes imposed a duty upon defendant City to license journeyman plumbers and that the City's attempt to repeal, by Ordinance No. 34984, the hitherto existing provision doing so, was ineffective.

The duties imposed upon the City by these statutes, also, are mandatory.

The grant of power contained in it is on a subject vitally affecting the public health and welfare. It is, in fact, a delegation to the City of the State's police power in the area of licensing plumbers. The duties imposed upon defendant City by these statutes relate to the essence of the basic object to be accomplished by their enactment—to protect persons living in populous areas from the lurking threats of contagion, disease and epidemic by requiring those who do plumbing work to be properly qualified. Obviously, this legislative purpose cannot be accomplished in any other manner than as prescribed in the statutes, that is, by the City's compliance with the provisions establishing a board of examiners for the licensing of journeyman plumbers, among others. (Section 341.040) The substantial rights of those seeking to be licensed as plumbers depend upon such compliance by the City, otherwise they cannot lawfully ply their trade. (Secs. 341.010 to 341.080) The grave injury to the public which these statutes seek to avoid could also result from the failure to make compliance. The requirements of statute "(are) imperative where the public or persons have rights which ought to be exercised or enforced". State ex rel. Carpenter v. City of St. Louis, 318 Mo. 870, 2 S.W.2d 713, 727 [23]. Or, as it has also been expressed, a statute is mandatory " 'where public interests are concerned and the public or third persons have a claim de jure that the power conferred should be exercised or whenever something is directed to be done for the sake of justice or the public good' ". Kansas City, Mo. v. J. I. Case Threshing Machine Co., supra, 337 Mo. 913, 87 S.W.2d 195, p. 205 [15–17]; Granite Bituminous Paving Co. v. McManus, 144 Mo.App. 593, 129 S.W. 448, 452; Miller v. Lakewood Housing Co., 125 Ohio St. 152, 180 N.E. 700, 81 A.L.R. 1239; Sutherland, Statutory Construction, Sec. 5804, 3d Ed.

Thus, the duties commanded of a city of 15,000 or more, by Chapter 341 to establish a board of examiners of plumbers

and for the licensing of master, employer and journeyman plumbers desiring to work within the territory are purely ministerial, contemplate the passage of an ordinance by the city to effectuate them, and are such as have been held to be enforceable by mandamus. Parrish v. Wright, (Texas Civil Appeals) 293 S.W. 659, 663 [6, 7]; [3] McQuillen, op. cit., Sections 1032, 24.538 and 51.21. And while mandamus is not sought here, it impresses us that such "(i)mperative or mandatory duties imposed on the municipality imply no discretion and may be compulsorily required". McQuillen, op. cit., Section 1032, p. 819.

Prior to the adoption by defendant City of Ordinance No. 34894, Article XXXVI of the Building Code contained Section 11.2300 providing for the licensing of master plumbers and Section 11.2320 providing for the licensing of journeyman plumbers, by examination, upon application to the City's Board of Plumbers' Examiners. Ordinance No. 34894, however, undertook to repeal Article XXXVI, among others, of the Building Code, and with it, Sections 11.2300 and 11.2320 providing for the licensing of master plumbers and journeyman plumbers. (The issues raised by the petition for declaratory judgment relate only to journeyman plumbers and we confine our discussion accordingly.) "Part Two—Qualification of Plumbers" of Ordinance No. 34894, which is also the ordinance of repeal, makes provision for the licensing of plumbing contractors only. (Who, we note, are not literally among those classifications of plumbers specified in Sections 341.010 and 341.020 as requiring licensing). "Part Two" of Ordinance No. 34894 also provides that the licensing of the contracting plumbers was to be made by the Board of Plumbers' Examiners, the same body which had been established to examine and license master and journeyman plumbers under the putatively repealed Article XXXVI. Neither the constituency of the Board nor its duties are specified in any of the ordinances made known to the trial court or to us, and we have no information as to them. As matters stand, therefore, if Ordinance No. 34894 effectively repeals Section 11.2320 of Article XXXVI, there is presently no provision by defendant City for the examination and licensing of persons seeking to work as journeyman plumbers within its territory.

As prelude to the discussion of that question, it should be noted that a statute regulating plumbers was first enacted in 1903 and was even then applicable to Kansas City. This early act was repealed and the present sections enacted in 1919. They have ever since applied to Kansas City. It does not appear when Kansas City first adopted an ordinance to comply with the requirements of what is now Chapter 341, but there is no reason to believe that compliance was not made within the three months after the passage of that chapter, as its terms command. Section 11.2320 of Article XXXVI was the last enactment of defendant City providing for the licensing of journeyman plumbers.

■ We conclude that the attempted repeal of Section 11.2320 was ineffective in the absence of a concurrent enactment by the City to supplant that provision with another for the licensing of journeyman plumbers. By Chapter 341, the state dele-

3. In that case (also brought by journeyman plumbers) involving remarkably similar statutory provisions and factual context, the City of Lubbock was among those cities required by statute to pass an ordinance providing for the establishment of an examining and supervising board of plumbers. The statute also provided punishment as a misdemeanor for those doing plumbing work without having been licensed. That city, as Kansas City, had enacted an ordinance in accordance with the statutory mandate, but later repealed it. The repealing ordinance provided that henceforth no license would be required to engage in plumbing within that city and abolished the examining and supervising board. Petitioners were granted mandamus commanding the city to enact an ordinance creating a board in accordance with the statutory provisions and to require the examination and licensing of all plumbers before working in that city.

gated a fundamental police function to the City, required its exercise in a prescribed manner and imposed penalties on those doing plumbing work in the City without first having been licensed by that City, all on the assumption the City would, as a matter of course exercise those ministerial duties imposed by that delegation. By its repeal of Section 11.2320, however, the City seeks to evade the delegated ministerial duties of providing for the licensing. of journeyman plumbers. The paramount governmental purposes of Chapter 341 to protect the public health and welfare cannot be thwarted merely by a City's refusal to exercise a power in the manner contemplated in the statutory grant. "Under the general rule that grants of power are strictly construed, such provisions are generally mandatory in the sense that the power granted can be exercised only in strict conformity with the statutory conditions therefor." Sutherland, op. cit., Sec. 5811, pp. 92–3; McQuillen, op. cit., Sec. 1027; Kroger Grocery & Baking Co. v. City of St. Louis, 341 Mo. 62, 106 S.W.2d 435, 439 [5–7], 111 A.L.R. 589; State ex rel. City of Blue Springs v. McWilliams, 335 Mo. 816, 74 S.W.2d 363, 364–365 [3]; Kansas City v. J. I. Case Threshing Machine Co., supra, p. 205. Sections 341.010 and 341.020 require those seeking to work as journeyman plumbers, master plumbers or employing plumbers in a city of 15,000 or more to be licensed for that purpose. Section 341.040 requires such a city, within three months of the passage of Chapter 341, to establish a board of examiners of plumbers. Section 341.050 requires the board to examine and license journeyman plumbers, as well as other plumbers, desiring to do plumbing work within its jurisdiction. (Unless, of course, a valid license has already issued from the board of another city of 15,000 persons, in which event none other is required, since Section 341.050 invests such a license with "force throughout the state".) Section 341.080 authorizes criminal prosecution against those violating the provisions of that chapter. We conclude Chapter 341 clearly contemplates that a city of 15,000 or more persons must not only provide for a board of examiners of plumbers for the licensing of journeyman plumbers, but must also give continuing effect to some such provisions until the legislative mandate to do so shall have terminated. For, by requiring journeyman plumbers seeking to do plumbing work within such cities to be licensed by them (unless otherwise properly licensed), and by imposing criminal penalties for failing to do so, Section 341.080, imposing such penalties, presupposes opportunity for compliance by journeyman plumbers, and opportunity is possible only if some ongoing provision for licensing by such cities remains in force.

We recognize the sound and fundamental rule: " 'In the absence * * * of a valid provision to the contrary the council of a municipal corporation having the authority to legislate on any given subject may exercise that authority at will by enacting or repealing an ordinance in relation to such subject matter' ". Lawson v. Moultrie, 194 Ga. 699, 22 S.E.2d 592, 594 [4–6]; City of St. Louis v. Cavanaugh, 357 Mo. 204, 207 S.W.2d 449, 454–5 [5]; Kaime v. Harty, 4 Mo.App. 357, 359.

We also recognize the power to repeal an ordinance may be limited, expressly or impliedly, by the grant itself. Thus the efficacy of the repeal depends upon the power to repeal. McQuillen, op. cit., Sec. 21.10; Sutherland, op. cit., Sec. 2003. For the reasons given, in the absence of a re-enactment of a provision for licensing journeyman plumbers as to avoid hiatus, the attempted repeal by the City of Section 11.2320, Article XXXVI by Ordinance No. 34894 was ineffective as beyond the scope of authority conferred on defendant City by Chapter 341.

We are not to be understood as suggesting that the City may not validly repeal, without re-enactment, as to those numerous matters which Chapter 341 leaves to its legislative discretion. The City recognizes this. It has, by Ordinance No.

34894, repealed and re-enacted provisions regulating plumbing materials, another mandatory duty imposed by that chapter—but in doing so, has authorized the use of different and other materials than previously specified, which are matters left to its discretion by statute.

■ The result of the invalid repeal of Section 11.2320 is that it remains in effect and continues to govern the licensing of journeyman plumbers by the City for those desiring to work within it. We find that although the attempted repeal is ineffective as to Section 11.2320 (and we are confined by the issues to that component of Article XXXVI), the invalidity of that repealing provision does not affect the balance of the enactment. In reaching this conclusion, we apply the ordinary rules as to separability (State on the Inf. of Wallach v. Loesch, 350 Mo. 989, 169 S.W.2d 675, 677 [1–3] and that of legislative intent (Gross v. Gentry County, 320 Mo. 332, 8 S.W.2d 887, 889 [3]). Ordinance No. 34894 undertakes to repeal Articles XXXVI, XXXIX and XL of the Building Code, each of which treats subjects which are completely independent of the other. As to Section 11.2320 dealing with the licensing of journeyman plumbers, repeal alone was intended since Ordinance No. 34894 contains no comparable provision. These Articles are entirely separable and independent of each other, as is Section 11.2320 from the balance of Article XXXVI. Hence the invalidity of the repealing clause as to Section 11.2320 does not affect the validity of the repeal as to the balance of Article XXXVI, all of Articles XXXIX and XL nor the enacting portion of Ordinance No. 34894 as far as it goes.

In giving judgment, the trial court properly declared:

(1) That Section 341.010 requires that journeyman plumbers must be licensed to work at the business of plumbing before doing so within the territorial limits of the City of Kansas City, Missouri.

The trial court should have further declared:

(2) That Chapter 341 requires the City of Kansas City to license journeyman plumbers desiring to work at the business of plumbing within its territorial limits and that the City has a duty to provide for such licensing.

(3) That the attempted repeal of Section 11.2320, providing for the licensing of journeyman plumbers by the City of Kansas City, was ineffective as beyond the statutory mandate of Chapter 341 because it was not accompanied by a re-enactment of a licensing provision for journeyman plumbers.

(4) That Section 11.2320 of Article XXXVI, of Chapter 11 of the Revised Ordinances of Kansas City, Missouri, 1956, As Amended, remains effective and governs the licensing of journeyman plumbers by defendant City.

The judgment of the trial court denying the petition for permanent injunction of appellants Stine and the others is affirmed. The declaratory judgment of the trial court is affirmed as modified by this opinion.

All concur.